UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
H CLARKSON & COMPANY LIMITED,

                                  Plaintiff,                    10 Civ. 6041 (JGK)

-v-


SLS SHIPBUILDING CO., LTD.

                                  Defendant.
------------------------------------------------------------------x


## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE


**CHALOS & CO, P.C.**
123 South Street
Oyster Bay, New York  11771
Tel:  (516) 714-4300
Fax:  (516)-750-9051
E-mail:  gmc@chaloslaw.com

Attorneys for Plaintiff
H CLARKSON & COMPANY LIMITED

Chalos & Co ref: 2001.055

**COMES NOW,** Plaintiff, H CLARKSON & COMPANY LIMITED (hereinafter "Clarksons"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in response to the Order to Show Cause issued by this Honorable Court on August 24, 2010 (*see* Docket #4). For the reasons more fully set forth below, Plaintiff respectfully submits that this Court should sustain this action, as Plaintiff has alleged claims against defendant SLS SHIPBUILDING CO., LTD. ("SLS") which properly fall within this court's admiralty jurisdiction.

## ARGUMENT

### PLAINTIFF'S CLAIMS AGAINST SLS FALL WITHIN THIS COURT'S ADMIRALTY JURISDICTION

Plaintiff's claim against Defendant SLS arises from the Defendant's breach of numerous vessel brokerage commission and maritime service agreements entered into by the parties during the period from February 2004 to June 2008. The agreements provided for SLS to make payments to Plaintiff Clarksons in consideration of Clarksons' provision of maritime services, including, *inter alia*, brokerage and consultancy services, to SLS. Pursuant to the terms of each commission agreement, Clarksons was to receive payments from SLS in five (5) installments, with each installment to be made within thirty (30) days of SLS's receipt of installment payments under the underlying contracts. The parties' dispute resolution clause provided that the agreements would be governed and interpreted by English law. Notwithstanding the parties' agreements, SLS failed, neglected, or otherwise refused to pay Clarksons for its services, resulting in an outstanding claim of USD 3,866,086.00.

Plaintiff respectfully submits that the primary purpose of Clarksons' contracts with the Defendant SLS is maritime commerce and, accordingly, the parties' dispute falls within this Court's admiralty jurisdiction. As the Ninth Circuit recognized in *Kan International, Inc. v.*

*Coastal Tankships U.S.A.*, 1997 U.S. App. LEXIS 4800 (9th Cir. 1997), "brokerage has a significant impact on 'maritime commerce.'" *Id.* at * 3 (quoting *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 612, 111 S. Ct. 2071 (1991)).

"In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping." 1-XII *Benedict on Admiralty* § 182 (2005). Where "the subject matter of the contract relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract." *Ingersoll Milling Mach. Co. v. M/V BODENA*, 829 F.2d 293, 302 (2d Cir. 1987).

In *Exxon*, the U.S. Supreme Court overruled the century-old rule that agency contracts were *per se* excluded from admiralty jurisdiction. Noting that the "fundamental interest" giving rise to admiralty jurisdiction is "the protection of maritime commerce", the Court held that the appropriate jurisdictional inquiry to be applied is "whether the nature of the transaction [is] maritime." *Id.* at 608, 611. "Courts should focus on the nature of the services performed . . . in determining whether a . . . contract is a maritime contract." *Id.* at 613, n. 7.

More recently, the Supreme Court issued its decision in *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 125 S. Ct. 385 (2004), and the Second Circuit decided *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307 (2d Cir. 2005). It is respectfully submitted that these two (2) cases signify an expanding scope of the Federal Courts' admiralty jurisdiction.

In *Kirby*, the Supreme Court, stating that "[t]he boundaries of admiralty jurisdiction over contracts . . . have always been difficult to draw", found that the "true criterion is whether [the contract] has reference to maritime service or maritime transactions." 543 U.S. at 23-24 (internal citations omitted). Quoting its holding in *Exxon*, the Court noted that the appropriate inquiry is "whether the principal objective of a contract is maritime commerce." *Id.* at 25. The Court further recognized that "[m]aritime commerce has evolved . . . and is often inseparable from some land-based obligations." *Id.*

Thereafter, in *Folksamerica*, the Second Circuit stated that the Supreme Court's *Kirby* decision "calls for reconsideration of our precedent" concerning the boundaries of the courts' admiralty jurisdiction over certain contractual disputes. 413 F.3d at 314. Noting that the Court's admiralty jurisdiction should be "defined by the purpose of the jurisdictional grant – to protect maritime commerce", the Court held that in cases involving "mixed" contracts, courts should focus on "whether the principal objective of the contract is maritime commerce." *Id.* at 311, 315 (quoting *Kirby*, 543 U.S. at 24 (2004)). Based on this inquiry, the Court found that the insurance contract at issue—despite containing non-maritime elements—was "primarily or principally concerned with maritime objectives" and, accordingly, admiralty jurisdiction was appropriate. *Id.* at 315.

Relying on the controlling authority of *Kirby* and *Folksamerica*, in *Kalafrana Shipping v. Sea Gull Shipping Ltd.*, 2008 U.S. Dist. LEXIS 78247 (S.D.N.Y. 2008), Judge Scheindlin found that a ship sale and purchase agreement had the requisite "salty flavor" which provided a basis for admiralty jurisdiction. Judge Scheindlin found that the holdings in *Kirby* and *Folksamerica* "support the demise of the holding in *The Ada* [250 F. 194 (2d Cir. 1918)]", a 1918 decision by the Second Circuit which held that ship sale agreements do not qualify as maritime contracts. *Id.*

at * 12. Judge Scheindlin's decision correctly reflects the expanding boundaries of admiralty jurisdiction signified by the *Kirby* and *Folksamerica* decisions.

In its 2009 decision in *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, the Second Circuit Court of Appeals further recognized *Kirby*'s expansion of the Court's admiralty jurisdiction. 585 F.3d 105, 114 (2d Cir. 2009). In *Proshipline*, the District Court had concluded that the parties' dispute did not confer admiralty jurisdiction because it concerned "the alleged breach of an executory contract" and the "prov[sion of] services to any vessel under Aspen's control expected to call at U.S. ports in the future" and thus was "analogous to requirements contracts that courts have found to be outside of admiralty jurisdiction." *Id.* at 113-14 (quoting *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 533 F. Supp. 2d 422, 427 (S.D.N.Y. 2008)). The Second Circuit disagreed. Relying on *Kirby* and its own prior decision in *Folksamerica*, the Court found that "[t]he agreement at issue here specifically references maritime services or maritime transactions." *Id.* at 114 (internal quotation marks omitted). The Court stated that the agreement at issue:

> appointed EP-Team 'as its sales agent to establish a sales and management operation to secure freight and associated revenue' to fill the excess capacity on Suzlon's time-chartered vessels. EP-Team was charged with facilitating voyages from the United States to India to ensure a full and efficient use of the vessels. On this basis, there is maritime jurisdiction.

*Id.* The Court noted that "the service under contract here – the arranging of sea voyages and port services – has an undeniably maritime flavor." *Id.* at 115. Under this expansive view of "maritime commerce" sufficient to support admiralty jurisdiction, it is respectfully submitted that the contract between Clarksons and SLS clearly implicates maritime commerce in view of the recent *Kirby*, *Folksamerica*, and *ProShipLine* decisions.

Here, Plaintiff Clarksons and Defendant SLS entered into a written agreement whereby Plaintiff provided, *inter alia*, vessel brokerage and maritime consultancy services to the Defendant, which were necessary for the Defendant's procurement of numerous shipbuilding agreements.[1] Under English law, *i.e.* – the law of the contract, a valid maritime claim arises out of "construction, repair or equipment of any ship." Int'l Convention Relating to the Arrest of Sea-Going Ships art. 1(1)(l), May 10, 1952, 439 U.N.T.S. 193 (ratified by the United Kingdom on Mar. 18, 1959). As the principle objective of the parties' agreements was maritime commerce, it is respectfully submitted that the parties' dispute for SLS's failure to compensate Clarksons for services it provided falls well within this Court's admiralty jurisdiction and, accordingly, the action should not be dismissed.[2]

## CONCLUSION

**WHEREFORE**, for the reasons more fully set forth above, Plaintiff respectfully submits that the claim at issue is sufficiently "salty" in flavor to give rise to admiralty jurisdiction. Accordingly, this Honorable Court should exercise its admiralty jurisdiction over this action retain jurisdiction over Plaintiff's claim.

---

[1] Plaintiff is mindful of the authority in this Circuit supporting the proposition that a dispute arising from a contract to build a ship does not fall within the federal courts' admiralty jurisdiction. *See, e.g., CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 380 n. 4 (2d Cir. 1982); *The Ada*, 250 F.194, 198 (2d Cir. 1918) (Rogers, J., concurring). Notwithstanding, Plaintiff respectfully submits that this rule was implicitly overruled by the Supreme Court's decision in *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14 (2004).

[2] As of the time of this writing, Defendant has raised no objection to this Court's exercise of jurisdiction over this action.

Dated: Oyster Bay, New York
       August 30, 2010

Respectfully submitted,

CHALOS & CO, P.C.
Attorneys for Plaintiff,
H CLARKSON & COMPANY LIMITED

/s/

George M. Chalos (GC-8693)
Kerri M. D'Ambrosio (KD-0249)
123 South Street
Oyster Bay, New York 11771
Tel:   (516)-714-4300
Fax:   (516)-750-9051
Email: gmc@chaloslaw.com

cc:   Clyde & Co US LLP
      The Chrysler Building
      405 Lexington Avenue
      New York, New York 10174
      Attn:   Christopher Carlsen